UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| EBERE F. AMAECHI-AKUECHIAMA, § | |
| § | |
| Plaintiff. § | |
| § | |
| VS. § | CIVIL ACTION NO. 3:19–CV–00234 |
| § | |
| U.S. BANK, N.A., § | |
| § | |
| Defendant. § | |

## MEMORANDUM AND RECOMMENDATION

This Memorandum and Recommendation addresses Defendant's Motion for Summary Judgment and Motion for Judgment on the Pleadings ("Motion"), which is pending before me. *See* Dkt. 17. After reviewing the Motion, response, and applicable law, I recommend that the Motion be **GRANTED**. I explain my reasoning below.

## BACKGROUND

In December 2005, Plaintiff Ebere F. Amaechi-Akuechiama ("Akuechiama") and her husband, Jude Akuechiama, purchased the property located at 3929 Lake Star Drive, League City, TX 77573 ("Property"). In connection with that purchase, Akuechiama executed a Note and Deed of Trust with Kingston Mortgage Company, LTD. U.S. Bank, N.A. ("U.S. Bank") later acquired the Note and Deed of Trust. Select Portfolio Servicing, Inc. ("SPS") acts as the loan servicer.

In 2018, a dispute arose regarding the loan secured by the Property. A foreclosure sale was scheduled for September 4, 2018, and Akuechiama's husband brought legal action in Texas state court to stop the foreclosure. That action was removed to federal court and

was ultimately settled pursuant to the terms of a Settlement Agreement (the "Agreement"). The Agreement was signed by Akuechiama and her husband.

> As part of the settlement, the parties agreed:
>
> A water-marked copy of a Loan Modification Agreement is attached here as Exhibit "A" to this Agreement. If [the Akuechiamas] timely return the fully executed Agreement and Request for Dismissal with Prejudice, SPS will provide [the Akuechiamas] with a non-watermarked copy of the Loan Modification Agreement to execute and return. [The Akuechiamas] will return two executed originals of the Loan Modification Agreement to counsel for SPS in accordance with the terms of the Loan Modification Agreement.

Dkt. 12-2 at 2. The Loan Modification Agreement, attached to the Agreement as Exhibit "A" and stamped "DRAFT," expressly states that the first monthly payment made in accordance with the loan modification will be due on May 1, 2019.

Although Akuechiama and her husband signed the Agreement, it is undisputed that they never executed and returned a copy of the Loan Modification Agreement. Why not? According to Plaintiff's Second Amended Petition, the Akuechiamas had originally requested a June 1, 2019 initial payment date for the loan modification and, although that date is nowhere to be found in the Agreement they executed, they were upset at U.S. Bank for failing to extend the payment deadline to June 1, 2019. Interestingly, Akuechiama acknowledges that she realized that the Agreement referred to a May 1, 2019 payment date before she signed it, but then went ahead and signed the Agreement anyway. It is also worth noting that the Agreement expressly provides that "[t]here is no other agreement, written or oral, expressed or implied, between the Parties with respect to the subject matter of this Agreement and the Parties declare and represent that no promise, inducement or

other agreement not expressly contained in this Agreement has been made conferring any benefit upon them." *Id.* at 5.

Akuechama originally filed this lawsuit in state court. After U.S. Bank removed the case to federal court, Akuechiama filed a Second Amended Petition, bringing causes of action against U.S. Bank for breach of contract, common law fraud, promissory estoppel, breach of duty of cooperation, breach of implied covenant of good faith and fair dealing, violations of the Texas Debt Collection Act, violations of the Texas Deceptive Trade Practices Act, and intentional infliction of emotional distress. U.S. Bank filed this Motion seeking to have each of Akuechiama's claims thrown out pursuant to Federal Rules of Civil Procedure 12(c) and 56.

## LEGAL STANDARD

**A.    R**ULE **12(c)**

Rule 12(c) provides, "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). "Rule 12(c) motions, like Rule 12(b)(6) motions to dismiss for failure to state a claim upon which relief may be granted, test the legal sufficiency of a claim." *Nguyen v. Luong*, No. 18-CV-07302-VKD, 2019 WL 2191341, at *2 (N.D. Cal. May 20, 2019) (Demarchi, J.). "Rule 12(c) is designed to provide a means of disposing of cases when the material facts are not in dispute between the parties." *United States v. A & R Prods.*, No. 01-CV-0072 MV/JHR, 2018 WL 2464497, at *2 (D.N.M. June 1, 2018) (Ritter, J.) (quotation marks and citation omitted). "The standards for dismissal under Rule 12(c) are the same as those under Rule 12(b)(6)." *Islam v. Morgans Hotel Grp. Mgmt. LLC*, No. 18-CV-3091(GBD)(RWL), 2019

3

WL 5722218, at *2 (S.D.N.Y. Aug. 27, 2019) (Lehrburger, J.). *See also Local 1180, Commc'ns Workers of Am., AFL-CIO v. City of New York*, 318 F. Supp. 3d 672, 678 (S.D.N.Y. 2018) (Aaron, J.) ("Courts apply the same procedure to evaluate motions for judgment on the pleadings under Rule 12(c) as for motions to dismiss under Rule 12(b)(6).").

Under Rule 12(b)(6), "a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts that, if true, would entitle the [plaintiff] to relief." *Inland Pac. Advisors, Inc. v. Markel Ins. Co.*, No. 8:18-CV-01497DOC(ADSX), 2018 WL 6588548, at *4 (C.D. Cal. Oct. 30, 2018) (Spaeth, J.). *See also Turner v. Sullivan*, No. 117-CV-01737AWIJDP, 2019 WL 2566971, at *1 (E.D. Cal. June 21, 2019) (Peterson, J.) (Rule 12(b)(6) "tests the legal sufficiency of the complaint, and dismissal is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.") (quotation marks and citation omitted). The purpose of Rule 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *MedSense, LLC v. Univ. Sys. of Md.*, No. CV GLS-18-3262, 2019 WL 4735430, at *4 (D. Md. Sept. 27, 2019) (Simms, J.) (quotation marks and citation omitted).

"To survive a 12(b)(6) motion to dismiss, a complaint must contain facts sufficient to state a claim for relief that is plausible on its face." *Worldspan Marine Inc. v. Comerica Bank*, No. 18-21924-CIV, 2019 WL 2267262, at *4 (S.D. Fla. Feb. 22, 2019) (Louis, J.) (quotation marks and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

4

defendant is liable for the misconduct alleged." *Hayes v. Facebook*, No. 19-CV-01297-TSH, 2019 WL 1411230, at *2 (N.D. Cal. Mar. 28, 2019) (Hixson, J.) (quotation marks and citation omitted). In evaluating a complaint under Rule 12(b)(6), I "must accept all well-pleaded factual allegations as true and construe them in the light most favorable to the plaintiff." *Woodroffe v. Coffin*, No. 8:18-CV-3023-T-23CPT, 2019 WL 4718965, at *2 (M.D. Fla. June 27, 2019) (Tuite, J.). While a complaint "does not need detailed factual allegations, it must provide more than labels and conclusions or a formulaic recitation of the elements of a cause of action." *Klohr v. Mid-Continet Excess & Surplus Ins. Co.*, No. 18-80761-CIV, 2018 WL 6978694, at *1 (S.D. Fla. Nov. 19, 2018) (Reinhart, J.) (quotation marks and citation omitted). In assessing the sufficiency of the complaint, I must limit my review "to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Patrick v. Martin*, No. 2:16-CV-216-D-BR, 2018 WL 3966349, at *4 (N.D. Tex. June 29, 2018) (Reno, J.) (quotation marks and citation omitted). *See also McCreery v. Comm'r of Soc. Sec.*, No. 18-CV-1744 (OTW), 2019 WL 5537946, at *2 (S.D.N.Y. Oct. 24, 2019) (Wang, J.) (In deciding a motion to dismiss, a court's review is "limited to the complaint's factual allegations, documents attached to the complaint, matters of judicial notice, and documents which Plaintiff relied on in filing the complaint.").

**B.     RULE 56**

Rule 56 governs motions for summary judgment. It provides that summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is genuine

only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *J&J Sports Prods., Inc. v. Ireta*, No. 5-16-CV-00915-FB-RBF, 2018 WL 3866609, at *1 (W.D. Tex. Aug. 14, 2018) (Farrer, J.).

"A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue for trial." *Spedag Ams., Inc. v. Bioworld Merch., Inc.*, No. 3:17-CV-0926-BT, 2019 WL 4689011, at *2 (N.D. Tex. Sept. 25, 2019) (Rutherford, J.). "To satisfy its initial responsibility, a movant without the burden of proof at trial need only point out that there is an absence of evidence to support the non-movant's claim to shift the burden to the non-movant to show that summary judgment is not proper." *Bishop v. Seterus, Inc.*, No. SA-18-CV-843-XR, 2019 WL 2774339, at *1 (W.D. Tex. July 1, 2019).

If the moving party meets its initial burden, "the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of [her] pleadings." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). Rather, the nonmoving party must "go beyond the pleadings" and submit competent summary judgment evidence "showing that there is a genuine issue for trial." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (quotation marks omitted). The party opposing the summary judgment motion must identify specific evidence in the record and state the precise manner in which that evidence supports the party's claim. *See Esquivel v. McCarthy*, No. 3:15-CV-1326-L, 2016 WL 6093327, at *2 (N.D. Tex. Oct. 18, 2016). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux v. Swift Transp.*

6

*Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

In ruling on a motion for summary judgment, I must construe "the evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences in that party's favor." *Darden v. Simplicity Fin. Mktg., Inc.*, No. 4:18-CV-1737, 2019 WL 6119485, at *1 (S.D. Tex. Nov. 18, 2019) (Bryan, J.).

\*\*\*

Although I am generally inclined to allow the parties to present oral argument on a dispositive motion, I do not see a need to hold such a hearing in this case since the issues are relatively straightforward. *See In re Szanto*, No. 118MC00061JMSDLP, 2019 WL 1877226, at *2 (S.D. Ind. Apr. 26, 2019) (Pryor, J.) ("Cases can be decided without oral argument where it would not significantly aid the court.").

## ANALYSIS

**A.    BREACH OF CONTRACT**

Under Texas law, "[t]he essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (quotation marks and citation omitted). U.S. Bank contends that summary judgment is required on Akuechiama's breach of contract claim because she has presented no evidence that U.S. Bank has breached the Agreement. To this argument, Akuechiama has

no response other than "[t]he time for discovery has not expired in this matter and the Plaintiff still has time to find evidence to support its [sic] claims." Dkt. 18 at 4.

Rule 56(b) provides: "Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment *at any time* until 30 days after the close of all discovery." FED. R. CIV. P. 56(b) (emphasis added). The Motion was filed on November 5, 2019. Discovery did not close until December 20, 2019. Thus, the timing of U.S. Bank's Motion was proper.

To obtain a continuance of a summary judgment motion to conduct additional discovery, a nonmovant must strictly follow the procedure set forth in Rule 56(d). Rule 56(d) states: "If a nonmovant shows by *affidavit or declaration* that, *for specified reasons*, it cannot present facts essential to justify its opposition [to a motion for summary judgment], the court may . . . allow time to obtain affidavits or declarations or to take discovery." FED. R. CIV. P. 56(d) (emphasis added). Akuechiama did not file a Rule 56(d) affidavit. This failure alone justifies a refusal to allow additional time to conduct discovery. *See Johnson v. Kaufman Cty.*, No. 3:15-CV-3595-L, 2017 WL 978099, at *5 n.2 (N.D. Tex. Mar. 14, 2017) (rejecting plaintiff's request for additional time to conduct discovery where plaintiff failed to file an affidavit to comply with Rule 56(d)).

Even if I assumed that Akuechiama's summary judgment response constituted a request for a Rule 56(d) continuance, and putting aside the fact that an affidavit or declaration is required, Akuechiama fails to identify with any specificity how discovery would enable her to meet her burden in opposing summary judgment. This is important because the party seeking to avoid summary judgment "may not simply rely on vague

8

assertions that additional discovery will produce needed, but unspecified facts." *Adams*, 465 F.3d at 162 (internal quotation marks omitted). *See also McCreless v. Moore Bus. Forms*, 111 F.3d 893, at *2 (5th Cir. Mar. 26, 1997) (Summary judgment in favor of defendant was appropriate where plaintiff "did not use the proper mechanism for requesting more discovery before a summary judgment ruling" and did "not ma[k]e a specific showing of what further discovery would reveal.").

In short, my consideration of the Motion should not be delayed to allow Akuechiama to pursue additional discovery efforts. She has been given a full opportunity to bring to my attention any evidence that could possibly support a breach of contract claim, and has failed to do so. Summary judgment is proper on the breach of contract claim.

**B.   PROMISSORY ESTOPPEL**

Akuechiama's second cause of action is for promissory estoppel. Under Texas law, "[t]he requisites of promissory estoppel are: (1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment." *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983).

In making a promissory estoppel claim, Akuechiama argues that U.S. Bank promised her that the May 1, 2019 initial loan modification payment date identified in the Agreement would be extended to June 1, 2019. This so-called promise was not in writing. Instead, Akuechiama's live pleading claims that U.S. Bank's "prior conduct of extending deadlines gave Plaintiff a reasonable expectation that the first payment date would be extended. Plaintiff reasonably and substantially relied on that promise to her detriment." Dkt. 12 at 4–5.

9

This promissory estoppel claim fails as a matter of law. Under Texas law, a loan agreement for more than $50,000 is not enforceable unless it is in writing. *See* TEX. BUS. & COM. CODE § 26.02(b). The term "loan agreement" includes any agreement or promise where a financial institution "loans or delays repayment of or agrees to loan or delay repayment of money, goods, or another thing of value or to otherwise extend credit or make a financial accommodation." *Id.* at § 26.02(a)(2). As such, it is black letter law that an agreement to modify a loan for more than $50,000 is subject to the Texas statute of frauds, and therefore, must be in writing to be enforceable. *See, e.g., Law v. Ocwen Loan Servicing, L.L.C.*, 587 Fed. Appx. 790, 794 (5th Cir. 2014) ("[B]ecause the loan agreement between Law and Ocwen for $284,000 was required to satisfy the Statute of Frauds, so too was the proposed modification agreement. Because the loan modification proposal failed to do so, it was not a valid contract upon which a claim of a breach can be based."). The loan at issue in this case is for $526,300. As such, any effort to assert a claim for breach of a loan modification agreement would fail for lack of a written agreement between the parties.

"Although promissory estoppel can sometimes provide a narrow exception to the statute of frauds, to fall within such an exception there must have been a promise to sign a written contract which had been prepared and which would satisfy the requirements of the statute of frauds." *Juarez v. Wells Fargo Bank, N.A.*, No. 5-17-CV-00756-FB-RBF, 2018 WL 835211, at *3 (W.D. Tex. Feb. 12, 2018) (Farrer, J.) (citations and quotations omitted). Therefore, the only way Akuechiama could have pursued a promissory estoppel claim was if she alleged that U.S. Bank promised to reduce the alleged promise to a written document

10

that would satisfy the statute of frauds. There are no such allegations in the Second Amended Petition. Consequently, Akuechiama's promissory estoppel claim should be dismissed under Rule 12(c). *See Milton v. U.S. Bank Nat. Ass'n*, 508 Fed. App'x. 326, 329 (5th Cir. 2013) ("Plaintiff's promissory estoppel claim is unavailing because plaintiff has failed to allege or introduce evidence that Ocwen promised to reduce its alleged oral misrepresentations into writing.") (collecting cases).

### C.   COMMON LAW FRAUD

Akuechiama's fraud claim is simply a restatement of her promissory estoppel claim. She asserts that U.S. Bank "made false and material representations to Plaintiff by, among other things, misstating and mischaracterizing the permissible first payment of the loan modification offered in connection with the Settlement." Dkt. 12 at 5. U.S. Bank argues this claim should be dismissed for a laundry list of reasons, including a failure to plead in compliance with Rule 9(b), the lack of any evidence to establish a legally viable fraud claim, and the economic loss rule.

Akuechiama's response focuses solely on trying to explain how she has satisfied the Rule 9(b) heightened pleading standard. Akuechiama does not even bother to respond to U.S. Bank's arguments concerning the absence of any evidence supporting a fraud claim or the economic loss rule's impact on her fraud claim. I need not determine whether Akuechiama has met the Rule 9(b) pleading standard because the other arguments advanced by U.S. Bank clearly bar Akuechiama from proceeding on her fraud claim.

To establish a fraud claim under Texas law, a plaintiff must prove: (1) a material representation was made; (2) the representation was false when made; (3) the speaker either

knew it was false, or made it without knowledge of its truth; (4) the speaker made the representation with the intent that the other party should act on it; (5) the party acted in reliance; and (6) the party was injured as a result. *See Coffel v. Stryker Corp.*, 284 F.3d 625, 631 (5th Cir. 2002). For whatever reason, Akuechiama has failed to attach any summary judgment evidence to her opposition to the Motion. As a result, there is absolutely no summary judgment evidence before me establishing even one of the elements of a fraud claim. All I am left with is the unsubstantiated assertions contained in the Second Amended Petition. As noted above, the allegations set forth in a live pleading, without more, are insufficient to defeat a motion for summary judgment because they are not competent summary judgment evidence. *See Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Summary judgment is, therefore, proper under Rule 56 because Akuechiama did not present competent summary judgment evidence creating a genuine issue of material fact.

Additionally, the economic loss rule bars Akuechiama's fraud claim. The economic loss rule provides that "[w]hen the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract." *Sw. Bell Tel. Co., v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991). The Fifth Circuit has further explained the economic loss rule as follows:

> Under this doctrine, a claim sounds in contract when the only injury is economic loss to the subject of the contract itself. In applying the rule, courts consider whether the defendant's conduct would give rise to liability independent of the fact that a contract exists between the parties. When no independent basis for liability exists, the rule applies.

*Law*, 587 Fed. App'x at 795. (internal quotation marks and citations omitted). Because the rights and obligations of the parties to the subject loan are governed exclusively by contract, the economic loss rule bars Akuechiama's fraud claims. *See Daryani v. Wells Fargo Bank, N.A.*, No. 4:10-cv-05181, 2012 WL 3527924, at *3 (S.D. Tex. Aug. 13, 2012) (holding that the economic loss rule barred a fraud claim against a lender because "any complaints by Plaintiffs about Wells Fargo's misrepresentation, or their failure to provide information relating to the loan or alleged modification agreement, relate to the parties' contractual relationship, and cannot, as a matter of law, form the basis of a fraud claim"). Accordingly, I recommend that Akuechiama's fraud claim be dismissed under both Rule 12(c) and Rule 56.

### D. BREACH OF DUTY OF COOPERATION AND THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Akuechiama next alleges that U.S. Bank breached the duty of cooperation and the implied covenant of good faith and fair dealing. These claims are really one and the same.

Under Texas law, "a duty of good faith is not imposed in every contract but only in special relationships marked by shared trust or an imbalance in bargaining power." *Fed. Deposit Ins. Corp. v. Coleman,* 795 S.W.2d 706, 708–09 (Tex. 1990). Texas courts have consistently held that the mortgagor-mortgagee relationship is not a special relationship that generally gives rise to a fiduciary duty. *See id*. at 709–10 ("The relationship of mortgagor and mortgagee ordinarily does not involve a duty of good faith."); *Johnson v. Wilmington Tr., N.A.*, No. H-18-489, 2019 WL 2453448, at *10 (S.D. Tex. May 16, 2019) ("Texas law does not recognize a common law duty of good faith and fair dealing in

transactions between a mortgagee and mortgagor, absent a special relationship marked by shared trust or an imbalance in bargaining power.") (quotation marks and citations omitted); *Watson v. Citimortgage, Inc.*, 814 F. Supp. 2d 726, 731 (E.D. Tex. 2011) (same).

The duty of cooperation/implied covenant of good faith and fair dealing claim fails under Rules 12(c) and 56 because Akuechiama has made no allegations and presented no evidence suggesting that a special relationship existed between Akuechiama and U.S. Bank outside the mortgagor-mortgagee relationship. With no such allegations nor evidence, this claim ends now.

E.   **TEXAS DEBT COLLECTION PRACTICES ACT**

Akuechiama also brings a claim for violations of the Texas Debt Collection Practices Act ("TDCPA").[1] The TDCPA prohibits debt collectors from making fraudulent, deceptive, or misleading representations concerning "the character, extent, or amount of a consumer debt." TEX. FIN. CODE ANN. § 392.304(a)(8). The TDCPA further prohibits debt collectors from "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer." *Id.* at § 392.304(a)(19). With respect to an alleged TDCPA violation, the Second Amended Petition alleges:

> [U.S. Bank] used its threats of foreclosure sale to induce Plaintiff to entering [sic] into the Settlement. Its prior conduct of extending deadlines, gave Plaintiff a reasonable expectation that the first payment date would be extended. Therefore, by refusing to extend the payment deadline and moving forward with foreclosure proceedings, Defendant threatened to take an action prohibited by law.

---

[1] The live pleading references a claim being brought under the non-existent Texas Debt Collection Act. It is evident that Akuechiama meant to raise a claim under the TDCPA, and I will assess the viability of a TDCPA claim in this Memorandum and Recommendation.

Dkt. 12 at 7. Without commenting on the merits of the TDCPA claim, these allegations are sufficient to adequately state a claim under the applicable pleading standards. But it is a completely different story when it comes to summary judgment.

In order to survive summary judgment, Akuechiama must raise a genuine issue of material fact. As there is no summary judgment evidence of a false representation, there is nothing in the summary judgment record to create a fact issue as to U.S. Bank's alleged fraudulent, deceptive, or misleading actions. In other words, Akuechiama has not presented a fact issue. For this simple yet persuasive reason, U.S. Bank's summary judgment motion as to Akuechiama's TDCPA claim should be granted.

**F.     TEXAS DECEPTIVE TRADE PRACTICES ACT**

Akuechiama also brings a cause of action against U.S. Bank under the Texas Deceptive Trade Practices Act ("DTPA"). The thrust of Akuechiama's DTPA claim is that U.S. Bank engaged in false, misleading, or deceptive acts or practices by refusing to extend the payment deadline on the loan modification and moving forward with foreclosure proceedings. Putting aside the fact that U.S. Bank was under no obligation to vary the terms of a written loan agreement and voluntarily extend a payment date, there is no genuine issue of material fact when it comes to the DTPA claim.

To meet the DTPA's standing requirement, a plaintiff "must plead and prove that he or she is a 'consumer' under the Act." *Jones v. Star Hous., Inc.*, 45 S.W.3d 350, 356 (Tex. App—Houston [1st Dist.] 2001, no pet.). To qualify as a consumer, Akuechiama must show that (1) she has sought or acquired goods or services by purchase or lease; and

15

(2) the goods or services purchased or leased must form the basis of the complaint. *See Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 351–52 (Tex. 1987).

In Texas, the general rule is that "a person cannot qualify as a consumer if the underlying transaction is a pure loan because money is considered neither a good nor a service." *Fix v. Flagstar Bank, FSB*, 242 S.W.3d 147, 160 (Tex. App.—Fort Worth 2007, pet. denied). *See also Riverside Nat's Bank v. Lewis*, 603 S.W.2d 169, 173–74 (Tex. 1980) (Because money is neither a good nor a service, a loan transaction falls outside the DTPA.).

Apparently recognizing the weakness in her argument, Akuechiama does not respond to U.S. Bank's argument that she is unable to establish consumer status. I find merit in the argument and dismiss the DTPA claim under Rule 56 because Akuechiama is unable to establish consumer status under the DTPA.

**G.    INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

Akuechiama's final cause of action is for intentional infliction of emotional distress. Akuechiama claims that she "endured stress, anxiety, and loss of sleep as a result of [U.S. Bank's] misconduct." Dkt. 12 at 9.

The elements of a claim for intentional infliction of emotional distress under Texas law are that: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was "extreme and outrageous"; (3) the defendant caused the plaintiff to suffer emotional distress; and (4) that emotional distress was severe. *Kroger Tex. L.P. v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006). Whether a defendant's conduct is "extreme and outrageous" is a question of law. *Brewerton v. Dalrymple*, 997 S.W.2d 212, 216 (Tex. 1999). To be "extreme and outrageous," the conduct must be "so outrageous in character, and so extreme

16

in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 611 (Tex. 1999) (quotation marks and citation omitted).

With this heightened standard in mind, "courts have rejected claims asserting intentional infliction of emotional distress where defendants simply exercised rights owed under mortgage loan documents." *Garza v. Deutsche Bank Tr. Co. Ams.*, No. A-12-CV-741 LY, 2012 WL 13029409, at *6 (W.D. Tex. Oct. 24, 2012). *See also Auriti v. Wells Fargo Bank, N.A.*, No. 3:12-CV-334, 2013 WL 2417832, at *8 (S.D. Tex. June 3, 2013) ("The actions of a financial institution attempting to enforce its contractual right to foreclose on a deed of trust under which the homeowner has defaulted, without more, do not meet the high bar of 'outrageous' behavior."); *Baskett v. Pleasant*, 1996 WL 135680, at *3 (Tex. App.—Dallas Mar. 27, 1996, writ denied) (defendant did no more than insist on legal rights as noteholder and landlord by engaging in proceedings incident to default and subsequent foreclosure and conduct thus cannot as matter of law support claim for intentional infliction of emotional distress); *Wieler v. United Sav. Ass'n of Tex.*, 887 S.W.2d 155, 159 (Tex. App.—Texarkana 1994, writ denied) (holding that "a foreclosure sale that complies with the terms of the loan agreements and the applicable law would not justify a claim for intentional infliction of emotional distress").

The present case is no different than the above-cited cases in which courts refused to allow an intentional infliction of emotional distress case proceed to a jury. At its core, Akuechiama's complaint is that U.S. Bank strictly adhered to its loan documents and payment obligations, refusing to give her a break by extending the deadline to make a loan

17

modification payment. Simply stated, I do not believe that a bank complying with the terms of its contractual documents can be viewed as engaging in behavior "so extreme in degree, as . . . to be regarded as atrocious, and utterly intolerable in a civilized community." *GTE*, 998 S.W.2d at 611. This is not even a close call. Akuechiama's intentional infliction of emotional distress claim must be dismissed on summary judgment as a matter of law.

## CONCLUSION

For the reasons stated above, I **RECOMMEND** that the Motion be **GRANTED** and this case be **DISMISSED**.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED at Galveston, Texas, this 31st day of January, 2020.

ANDREW M. EDISON  
UNITED STATES MAGISTRATE JUDGE